**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **KRISTINE M GRACE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No. 1:25-cv-00443-ALT** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** *sued as Frank Bisignano*, | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff Kristine M. Grace appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for Supplemental Security Income Benefits (SSI), Disability Insurance

Benefits (DIB), and period of disability. (ECF 1). Grace filed her opening brief on March 7,

2026, and the Commissioner filed a response in opposition on May 28, 2026. (ECF 21, 25). On

July 9, 2026, Grace filed her reply brief. (ECF 28). Therefore, the case is ripe for ruling.

For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

 Grace applied for SSI and DIB in July 2023, alleging disability beginning April 1, 2023.

(ECF 16 Administrative Record ("AR") at 16, 276-84).[1] Her claim was initially denied on April

12, 2024, and denied on reconsideration on July 3, 2024. (AR 16, 112-15). On April 2, 2025, she

appeared for a phone hearing before Administrative Law Judge (ALJ) Stephanie Katich. (AR 16,

55). Grace was represented by counsel, and vocational expert (VE) Kathleen Byrnes also

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

appeared. (AR 16, 55). The ALJ issued an unfavorable decision on April 22, 2025, concluding that Grace was not disabled because she was capable of performing a significant number of jobs in the national economy. (AR 16-31). Grace filed a request for review by the Appeals Council, which denied the request on June 20, 2025 (AR 7-9), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Grace filed a complaint in this district court requesting review of the Commissioner's final decision on August 24, 2025. (ECF 1). In this appeal, Grace argues the ALJ erred by (1) making an adverse credibility finding based on Grace's noncompliance and otherwise lesser-level of treatment for her severe impairments and (2) failing to consider the difference between a medical clinic and the workplace in evaluating medical evidence. (ECF 21 at 9-17).

On the date of the Commissioner's final decision, Grace was thirty-eight years old and had a limited education and unskilled past work. (AR 29). Grace alleges disability due to degenerative disc disease, active hepatitis C, major depressive disorder, generalized anxiety disorder, panic disorder, bipolar disorder, and posttraumatic stress disorder (AR 343).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d

863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

## B. The Commissioner's Final Decision

At step one, the ALJ found Grace had not engaged in substantial gainful activity since April 1, 2023, the alleged onset date. (AR 19). At step two, the ALJ found that Grace had the following severe impairments: degenerative disc disease of the lumbar spine; asthma; obesity; major depressive disorder; generalized anxiety disorder; bipolar mood disorder; post-traumatic stress disorder (PTSD); schizoaffective disorder, bipolar type; and attention-deficit hyperactivity disorder. (*Id.*). At step three, the ALJ found Grace does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20).

The ALJ assigned Grace the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs; she can never climb ladders, ropes, or

scaffolds; she can frequently balance; she can occasionally stoop, kneel, crouch and crawl; she should avoid concentrated exposure to wetness, vibration, including vibrating hand tools and surfaces, and hazards such as slick surfaces, working in extreme heights or in proximity to hazardous machinery, and she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extreme heat, and extreme cold. In addition, the claimant can understand, remember and carry out simple instructions, she can make judgments related to simple work related decisions, she can respond appropriately to occasional interactions with coworkers and supervisors, she should avoid work activity requiring interactions with the general public, she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting free from fast paced production requirements, such as assembly line type work activity.

(AR 23).

At step four, the ALJ found Grace is "unable to perform any past relevant work." (AR 28). However, at step five the ALJ found that a hypothetical individual of Grace's age, education, experience, and RFC could perform a significant number of unskilled, light-exertional jobs in the national economy, including merchandise marker, routing clerk, and small product assembler. (AR 30). Thus, Grace's applications for SSI and DIB were denied. (AR 30-31).

### C. Consideration of Treatment History and Compliance

Grace argues that the ALJ improperly made adverse credibility determinations based on her lack of treatments and noncompliance with treatment for her back and mental health problems. (ECF 21 at 10). Grace cites *Murphy v. Colvin* where the Seventh Circuit found,

> [t]he ALJ may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed. However, such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan. Therefore, an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment.

759 F.3d 811, 816 (7th Cir. 2014) (internal citations omitted). However, Grace argues the ALJ did not ask her about or examine any potential reasons for lack of treatment for her degenerative disc condition, as is required. (ECF 21 at 10).

In her analysis, the ALJ explains

> [a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the record. Regarding physical issues, the claimant has degenerative disc disease of the lumbar spine as confirmed on imaging, but there is only conservative, intermittent treatment and no evidence of progression of symptoms (1F; 16F). Examinations note normal reflexes, normal sensation, but slight tenderness and some restriction on straight leg raise tests at times, but these are not consistently noted, nor are her complaints of back pain (e.g., 1F, pp. 6-7, 9-10, 13, 16, 18-19, 21-22; 3F, pp. 1-2, 3-4, 9-10; 11, pp. 3, 7; 13F, pp. 1-2).

(AR 25). This analysis does discount Grace's subjective statements, however this is supported by substantial evidence.

"Credibility determinations will not be overturned unless they are clearly incorrect." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). The ALJ found Grace's symptom testimony inconsistent with her intermittent treatment, and relying on such observations is proper. "The ALJ may consider inconsistencies between the severity of symptoms reported at the hearing and those reported while seeking treatment, the failure to regularly seek treatment for those symptoms, and/or the pursuit of 'routine and conservative' treatment." *John H. v. Saul*, No. 118CV02586TWPMPB, 2019 WL 6909582, at *5 (S.D. Ind. Dec. 18, 2019) (citing *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005)).

However, both parties agree, "[t]he ALJ just cannot make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for failure to seek treatment or noncompliance with it." (ECF 25 at 7 (citation omitted); *see* ECF 21 at 9). The Commissioner argues the ALJ did not make assumptions about Grace's minimal treatment, but

specifically asked Grace whether she had health insurance during the period at issue and she responded affirmatively. (AR 78). Grace in turn points to a 2024 medical record which states, Grace "presents today for a delayed 6-month follow-up after losing her insurance." (AR 668). However, both parties go down this path of argument unnecessarily.

"Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, [the regulations have been interpreted to say,] an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). In this case, the ALJ does not base her analysis on the premise that there are insufficient medical records, and thus no impairment. In that instance, a discussion of the insurance issue or other reasons for lack of treatment would be relevant. Lack of medical care is not an issue here. Rather, the medical records reflect the conservative nature of treatment and the lack of progression of symptoms. The ALJ cites Graces's medical records which span from 2022 to 2025 and reflect troubles with her back, but also reflect the limited extent of her treatment. Some records mention Grace's back problems briefly and offer no elaboration on treatment, while some records detail more of a treatment plan, which is the intermittent treatment the ALJ refers to. The ALJ is correct that the treatment was conservative and the earlier and later records reflect much of the same symptoms. (*See* AR 438-63, 739). Importantly, the ALJ does not discount Grace's symptom testimony for lack of medical records, but instead on the content therein. In short, the ALJ properly supported her conclusion that there was just not enough evidence to support claimant's subjective statements.

Grace argues the ALJ also makes a credibility determination on Grace's mental health statements based on lack of treatments. (ECF 21 at 10). However, Grace misreads the ALJ's

7

decision. The ALJ says, Grace's "reports of excessive symptoms are not congruent with her mental status examinations, especially since medical providers rarely note any anxiousness or other symptoms (e.g., 1F, p. 10; 11F, pp. 3, 7). The claimant has not been hospitalized for any mental health decompensation, and her treatment has improved her functioning." (AR 26). Grace takes issue with the statement that she has not been hospitalized, saying the ALJ needed to ask Grace if there were good reasons for the lack of further treatment for her mental health condition.

The Seventh Circuit has called into question cases in which the ALJs question a plaintiff's symptom testimony based on lack of treatment, sporadic treatment, or failure to follow a treatment plan because perhaps there is an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects. *See, e.g., Shauger*, 675 F.3d at 696. This is a far cry from the logic the ALJ deployed here. The ALJ's analysis does not suggest that there was a lack of treatment or the like, rather that the treatment did not include Grace needing to be hospitalized. (*See* AR 26). The ALJ's reliance on Grace's medical records and the description of her mental health therein is correct. Further characterization that this treatment has not amounted to hospitalization is also correct. The ALJ's consideration of Grace's symptom testimony about her mental health based on these records is proper and supported by substantial evidence.

Lastly, Grace argues that the ALJ's assertion regarding Grace's marijuana use amounts to a statement of noncompliance with treatment. (ECF 21 at 10-11). This characterization of the ALJ's analysis is not convincing. The ALJ writes, "while the claimant has some lingering symptoms, it is difficult to determine to what degree these are organic versus side effects of persistent marijuana consumption." (AR 26). Nothing in this statement has to do with noncompliance with treatment, and instead, the ALJ suggests that the lingering symptoms may be related to the marijuana use. There is also no indication that the ALJ skewed the marijuana

8

use negatively, rather than as a possible explanation for symptoms. The Court is not persuaded that the mention of the facts of marijuana use equates to a statement of lack of compliance with mental health treatment. The ALJ did not err.

*D. Consideration of the Difference Between a Doctor's Office and Work Setting*

Grace argues the ALJ needed to consider the difference between a medical clinic and a workplace in crafting the RFC. (ECF 21 at 12); *see Senora W. v. O'Malley*, No. 21 CV 4411, 2024 WL 4346613, at *16 (N.D. Ill. Sept. 30, 2024) (finding the ALJ erred by "overlook[ing] the fact that the more controlled and comfortable environments of home or a therapist's office are quite different from the work setting"). However, the RFC is supported by substantial evidence.

1. <u>Mental RFC</u>

In the cases Grace cites, the ALJs are often taking evidence of everyday functioning or observations of mental health providers and incorrectly extrapolating that to work performance. *See Senora W.*, 2024 WL 4346613, at *16 ("The ALJ did not explain how plaintiff's ease and comfort with people who are regular fixtures in her life translates into an ability to appropriately interact with coworkers and the public…."); *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107-08 (11th Cir. 2021) ("Simon's ability to solve basic math problems says little to nothing about his ability to perform simple tasks on a full-time basis, his ability to respond appropriately to the stress of  customary work pressures, his ability to interact with others in the workplace, or his ability to concentrate, persist, and maintain pace."). The ALJ does not do that here.

Instead, the ALJ adopts mental limitations in the RFC consistent with the opinions of Dr. Maura Clark and Dr. J. Gange, which take into consideration the difference between a medical clinic and a workplace. (AR 99, 134-35). Under 20 C.F.R. § 404.1513(a)(2) and 416.913(a)(2),

the purpose of such medical opinions is to translate the record into a person's work abilities. The

RFC as recommended by Dr. Clark reads,

> [t]he totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and work situations; able to deal with changes in a routine work setting.

(AR 135).[2] The ALJ also added details to further tailor the RFC to the workplace.[3]

> The undersigned has added more detail to this, including the use of occasional instead of "brief" with respect to the social interaction, because the term "brief" is not a programmatic term defined in our regulations. Further, the undersigned added a restriction for public contact as this is greatly supported by the record.

(AR 27). By adopting the RFC of the agency doctors and adding work-tailored language, the

ALJ considered the way in which Grace's limitations would translate to the workplace. This is

especially evident in the inclusion of public contact restrictions in which the ALJ looks beyond

the medical opinions and into the record to reflect Grace's challenges.

The ALJ says Grace's "reports of excessive symptoms are not congruent with her mental

status examinations, especially since medical providers rarely note any anxiousness or other

symptoms." (AR 26). Grace takes issue with this statement, saying although the medical

providers do not find anxiousness, that does not mean it would not arise in the workplace. (ECF

21 at 13). However, unlike Grace's cited caselaw, she puts forth no evidence that would suggest

---

[2] Dr. Gange's recommended RFC is nearly identical. The only difference is Dr. Gange says Grace is "able to respond appropriately to brief supervision and *interactions with coworkers* and work situations," and includes the phrase "interactions with coworkers," which Dr. Clark omits. (AR 99, 134-35 (emphasis added)).

[3] The mental portion of the RFC reads,
> the claimant can understand, remember and carry out simple instructions, she can make judgments related to simple work related decisions, she can respond appropriately to occasional interactions with coworkers and supervisors, she should avoid work activity requiring interactions with the general public, she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting free from fast paced production requirements, such as assembly line type work activity.

(AR 23).

this. For instance, in *Senora W*, the plaintiff was historically difficult with coworkers and strangers, and yet the ALJ found that "the ability to live with one's own husband and minor children supports a finding that plaintiff is able to interact with coworkers and the public in a work environment." 2024 WL 4346613, at *16. The court found that without further explanation, this logic does not stand. *Id.*

This problematic logic does not exist in this case. Grace does not point to any evidence of workplace-related problems that were not captured by medical providers. Nor does the ALJ make any leaps in logic or arrive at conclusions without explanation. In the alternative, the ALJ adopted the RFC of the agency doctors and added work-tailored language, creating a more protective RFC than suggested by agency doctors.

The agency doctors' opinions are based on their analysis of documents from 2024 and prior, while the ALJ had additional documents after 2024 at her disposal. Referring to the agency doctors' opinions and their relied-upon medical records the ALJ says, "[w]hile this does not represent the full record available to the undersigned at the hearing level, the level of abnormality reflected in these records is greater than the additional records received thereafter." (AR 26). Grace takes issue with this statement and argues the ALJ's decision is dubious. (ECF 21 at 15). However, this argument lacks merit. The ALJ is saying that even though she had more recent records at her disposal, these more recent records represent a mentally healthier version of Grace. (*See* AR 26). Despite this, the ALJ adopted the mental RFC as determined by the medical opinions. Thus, the RFC is based more heavily on the records from 2024 and prior, a more favorable record to Grace. The ALJ does not find there was a great improvement or resolution of symptoms after 2024 and then create a less protective RFC. Rather, the ALJ based the RFC on the worse version of Grace's symptoms which included an assessment by the doctors of how her

limitations would translate to the workplace. Given the ALJ has adopted an RFC in line with the medical opinions, the decision is supported by substantial evidence.

2. <u>Physical RFC</u>

Grace argues that in analyzing Leah Patton, M.D.'s opinion, the ALJ did not consider that physical exams are not work like. (ECF 21 at 16). However, the ALJ properly analyzed Dr. Patton's opinion and built a logical bridge in doing so. The ALJ explains that although Dr. Patton did find abnormalities in her exam, the determination in the physical exam that Grace had full muscle strength was not consistent with Dr. Patton's recommended limitations. (AR 27-28). For instance, the ALJ did not find Dr. Patton's opinion that Grace could only stand or walk a total of two hours and lift or carry less than 10 pounds frequently and over 10 pounds frequently with frequent breaks consistent with the lack of "strength deficits in the upper extremities and no problems with the cervical spine or shoulders." (AR 27-28). The ALJ also explained, Dr. Patton's "findings are inconsistent with the record, which shows some degenerative disc disease in the lumbar spine, but only some tenderness and pain on occasional examinations with minimal, sporadic treatment." (AR 27-28). Instead, the ALJ determined Dr. Patton's recommended limitations were more in line with Grace's subjective reports rather than the physical exam, leading the ALJ to find Dr. Patton's opinion unpersuasive. This analysis represents a well-developed logical bridge in rejecting Dr. Patton's opinion.

Contrary to Grace's argument, the ALJ also found Dr. Patton's opinion unpersuasive because of Grace's physical performance at work. The ALJ notes, "[t]he testimony also revealed that the claimant performs a cleaning job that, while part-time, requires lifting and carrying consistent with light exertion work, and no indication by the claimant that she is unable to sustain this." (AR 28). This defeats Grace's point that the ALJ did not consider that physical

medical exams are not work-like. The ALJ very much understood this and found that Grace's

physical performance at work was inconsistent with Dr. Patton's restrictions. The ALJ accurately

built a logical bridge and the decision is supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is

DIRECTED to enter a judgment in favor of Commissioner and against Grace.

SO ORDERED.

Entered this 3rd day of August 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge